**Almer T. TINDLE, Plaintiff,**

v.

**Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare, Defendant.**

**No. 2046–ND.**

United States District Court
S. D. California, N. D.
Nov. 26, 1962.

John M. Nairn, Bakersfield, Cal., for plaintiff.

Francis C. Whelan, U. S. Atty., by Morton H. Boren, Asst. U. S. Atty., Los Angeles, Cal., for defendant.

YANKWICH, District Judge.

Almer T. Tindle has instituted an action against the Secretary of Health, Education and Welfare who denied to plaintiff the right to old age benefits. Lengthy hearings were held before a trial Examiner before the Secretary's order was made. The transcript of the proceedings covers nearly 200 pages.

The controversy turns around the birth date of the plaintiff. Indeed the entire argument is one of fact in which it is insisted that the Hearing Examiner and the Secretary erred in concluding that the petitioner-plaintiff *was not* so old as she claims to be.

The provisions of the law under which the action is brought are:

"§ 402(a) Every individual who—

"(1) is a fully insured individual * * *,

"(2) has attained age 62, and

"(3) has filed application for old-age insurance benefits or was entitled to disability insurance benefits for the month preceding the month in which he attained the age of 65,

shall be entitled to an old-age insurance benefit for each month, beginning with the first month after August 1950 in which such individual becomes so entitled to such insurance benefits and ending with the month preceding the month in which he dies. * * *" (42 U.S.C.A. § 402(a))

Section 202(j) (2) of the Act (42 U. S.C.A. § 402(j) (2)) provides that an application shall not be accepted if filed *more than three months* prior to the first month for which the applicant becomes entitled to benefits.

Section 205(a) of the Act, as amended (42 U.S.C.A. § 405(a)) provides as follows:

"The Secretary shall have full power and authority to make rules and regulations and to establish procedures, not inconsistent with the provisions of this subchapter, which are necessary or appropriate to carry out such provisions, and shall adopt reasonable and proper rules and regulations.to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same in order to establish the right to benefits hereunder."

Section 205(b) of the Act (42 U.S.C. A. § 405(b)) provides in part:

"Evidence may be received at any hearing before the Secretary even though inadmissible under rules of evidence applicable to court procedure."

The regulations which the Secretary has promulgated for the type of evidence to be received on age and the method of evaluating it need not be gone into.

Summary judgment is sought by the Secretary in an action brought by the petitioner-plaintiff to review the action of the Secretary in finding that she *was not* entitled to the benefits she claimed because she was born on November 2, 1895 and therefore had not reached the age of 62 at the time she filed her application for old-age insurance benefits.

In approaching the problem it is to be noted that the Statute under which the review is sought contains the following provision:

"The judgment of the court shall be final except that it shall be subject to review in the same manner as a judgment in other civil actions." (42 U.S.C.A. § 405(g))

Clauses of this character limiting the scope of review of official proceedings are common. Reviews of the rulings of referees in bankruptcy are subject to this limitation. (General Order 47) Indeed Section 52 of the Federal Rules of Civil Procedure so limits the scope of review of findings of lower federal courts. The Supreme Court, in a leading case, has stated that the findings in such cases will not be disturbed "in the absence of a very obvious and exceptional showing of error." (Graver Tank & Mfg. Co., Inc. v. Linde Air Products Co., 1949, 336

U.S. 271, 275, 69 S.Ct. 535, 537, 93 L.Ed. 672)

The Court of Appeals for the Ninth Circuit in United States v. LaLone, 1945, 152 F.2d 43, in interpreting this section, has stated:

> "Under this section of the Social Security Act providing for appeals from an administrative board, as under other similar acts, the board's findings of fact must be sustained if the court finds they are supported by substantial evidence. This same finality extends to the Board's inferences and conclusions from the evidence if a substantial basis is found for them." (p. 44)

The same court in a later case adopted the same criterion. (Graham v. Ribicoff, 9 Cir., 1961, 295 F.2d 391, 394–395) Similar criteria are applied in cases seeking review the action of the Commissioner of Internal Revenue, (Wener v. Commissioner of Internal Revenue, 9 Cir., 1957, 242 F.2d 938. And see, Ward v. Commissioner of Internal Revenue, 9 Cir., 1955, 224 F.2d 547; A.B.C. Brewing Corp. v. Commissioner of Internal Revenue, 9 Cir., 1955, 224 F.2d 483; Commissioner of Internal Revenue v. Siegal, 9 Cir., 1957, 250 F.2d 339; Pool v. Commissioner of Internal Revenue, 9 Cir., 1957, 251 F.2d 233; Factor v. Commissioner of Internal Revenue, 9 Cir., 1960, 281 F.2d 100) and actions of the Federal Trade Commission. (De Gorter v. Federal Trade Commission, 9 Cir., 1957, 244 F.2d 270; Feil v. Federal Trade Commission, 9 Cir., 1960, 285 F.2d 879)

The Supreme Court in a noted case has given us a guide by which to determine when findings *are* clearly erroneous:

> "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (United States v. United States

Gypsum Co., 1948, 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746)

As to the scope of the finality, it has been said:

> "The rule itself applies also to factual inferences from undisputed basic facts * * * as will on many occasions be presented in this area." (Commissioner v. Duberstein, 1960, 363 U.S. 278, 291, 80 S.Ct. 1190, 1199, 4 L.Ed.2d 1218)

And see, Guzman v. Pichirilo, 1962, 369 U.S. 698, 702–703, 82 S.Ct. 1095, 1098, 8 L.Ed.2d 205.

In the light of these rules the plaintiff was required to establish that within three months after the date on which she filed her application she would attain retirement age, i. e., the age of 62. (42 U.S.C.A. § 402(a) and § 416(a) (2))

A review of the record and the lengthy transcript leads to the conclusion that the Commissioner was warranted in disallowing her claim.

A delayed birth certificate filed for plaintiff's son in 1937, a census record from 1930, the birth certificate for an adopted child recorded in 1943 and an affidavit by her mother, now deceased, who was ninety years of age at the time she executed the affidavit solely from memory, constitute the evidence submitted which is consistent with her contention that she was born in 1891. Her 1938 application for a social security account number and the records of insurance companies who insured her in 1939 and 1940 place her birth date in 1892 or 1893. Very significantly two documents, so-called "family records" offered to prove age were shown by the Government to have been altered, the alteration relating to the date of birth and no explanation being given for the alteration.

It is argued that the delayed birth certificate of the son having been issued on *direction* of a judge of a State Court of Record, it is entitled to full faith and credit under the special statutory provision (28 U.S.C.A. § 1739) which is

akin to the full faith and credit guaranty for state judgments under the federal Constitution. (United States Constitution, Art. IV, Sec. I)

 The constitutional provision applies to States only. So far as the federal government is concerned full faith and credit is accorded to public non-judicial records of a State in federal court trials by virtue of the congressional enactment just referred to. (28 U.S.C.A. § 1739) But even under the constitutional provision the rights to be accorded are *coincidental* with the right accorded by the State whose judgment it is sought to enforce.

> "A judgment duly rendered by a state court of competent jurisdiction is entitled to receive in all courts of the United States the 'full faith and credit' which the courts of another state would be bound to accord to it; that is, it will be given the same credit, force, and effect which it would receive in the courts of the state where it was rendered, *no more and no less*." (50 C.J.S. Judgments § 900, p. 518) (emphasis added)

The important gloss in this statement is the phrase "no more and no less". This has been the ruling of courts generally even under the constitutional guaranty. (Huron Holding Corp. v. Lincoln Mine Operating Co., 1941, 312 U.S. 183, 193-194, 61 S.Ct. 513, 518, 85 L.Ed. 725; Riley v. New York Trust Co., 1942, 315 U.S. 343, 348-349, 62 S.Ct. 608, 612, 86 L.Ed. 885; Western Union Telegraph Co. v. Pennsylvania, 1961, 368 U.S. 71, 75, 82 S.Ct. 199, 201, 7 L.Ed.2d 139; National Refining Co. v. United States, 8 Cir., 1947, 160 F.2d 951, 954-955; United States v. Silliman, 3 Cir., 1948, 167 F.2d 607, 611; United States v. Borin, 5 Cir., 1954, 209 F.2d 145, 148; Lyons v. Westinghouse Electric Corporation, 2 Cir., 1955, 222 F.2d 184, 188-189; Guer-rero v. American-Hawaiian Steamship Co., 9 Cir., 1955, 222 F.2d 238, 243-245)

The bearing of these rulings upon the problem before us is this: Under a statute of the State of Texas birth records and other similar documents are merely *prima facie* evidence. Texas Civil Statutes, Rule 54a, Article 4477, Vernon's Ann.Civ.St., provides that vital records shall be "prima facie evidence in all courts and places of the facts therein stated".

 The Texas Court of Criminal Appeals has said that prima facie evidence of this type "does not constitute absolute or conclusive proof of guilt", but is "proof upon which the jury may find a verdict, *unless rebutted by other evidence*". (Alston v. State, 1950, 154 Tex. Cr.R. 148, 226 S.W.2d 443, 445) This for the reason that "the prima facie evidence statute *is a rule of evidence*". (Ibid.)

Other than the altered Bible record, the original date on which was identified as 1895, the oldest record relating to marriage is a marriage license issued on September 4, 1920 giving the plaintiff's age as 24 and a second marriage license issued on December 2, 1924 obtained by the plaintiff's present husband giving her age as 31. However, the plaintiff has testified that her husband gave her age as two years older than she really was. These two documents would be consistent with the birth date of November 2, 1895.

In view of the fact that these records are of recent origin and were secured by the plaintiff or for her benefit, at a time when it was to her financial interest to establish a later birth date, the Hearing Examiner was justified in refusing to give them any weight and to determine on the basis of other evidence in the record that the true date of birth of the plaintiff was November 2, 1895.[1]

---

1. The Appeals Council has summarized correctly the plaintiff's contradictory statements as they appear in the record. They are here reproduced.

(Excerpt from Decision of Appeals Council, dated September 29, 1961)

The claimant is a married woman who was born in Texas, but has lived in Cali-

**916**

■ In the light of what precedes it is evident that there is substantial evidence for the finding of the Secretary that the plaintiff was born on November 2, 1895.

■ To reach a contrary conclusion would mean to substitute our judgment for his. This we are not allowed to do either under the Administrative Procedure Act (5 U.S.C.A. § 1001 et seq.)

or the Social Security Act (42 U.S.C.A. § 405(g)) More, the record does not command a different conclusion. (Carqueville v. Flemming, 7 Cir., 1959, 263 F.2d 875, 877; Flemming v. Huycke, 9 Cir., 1960, 284 F.2d 546; United States v. LaLone, supra, 152 F.2d p. 44; Foster v. Flemming, D.C.Iowa, 1960, 190 F. Supp. 908)

Summary judgment will, therefore, be for the defendant.

fornia for many years. The date of her birth has been stated variously for various purposes on various occasions. The present problem is to establish her exact date of birth. There are of record many documents, some executed by the claimant and some executed by other persons, which purport to show her date of birth, but there is no unanimity among them, nor has the claimant been consistent in her statements as to the date of birth.

For example the claimant filed an application for benefits on May 28, 1956, in which she gave her date of birth as November 2, 1889. On October 11, 1956, she filed another application for benefits in which she stated her date of birth as November 2, 1891; on October 9, 1956 the claimant signed a statement at the district office in which she said that she had been born in 1889, but in the same statement also determined that she had been born in 1891. Various other documents, of record, including a late filed birth certificate for her son, Hosea; a census record for 1930; the birth certificate of an adopted child; and an affidavit from the claimant's mother either show the claimant's date of birth as November 2, 1891, or would be consistent with such birth date on the basis of the age shown therein. The claimant's mother has since died and was approximately ninety years old when she executed the affidavit and the claimant has testified that it was based on memory.

A marriage license obtained on September 4, 1920, shows the claimant to have been age twenty-four at the time she married W. F. C. Fisher which would mean

that the claimant's date of birth was November 2, 1895; while a later marriage license obtained on December 2, 1924 shows the claimant's age as thirty-one, which would make her date of birth November 2, 1893. However, at the hearing the claimant testified that when her husband "went up to give my age to get the marriage certificate he just put my age two years older than what I was * * *." Obviously, with this adjustment the claimant's date of birth would again have been given as November 2, 1895.

Other documents give still other ages. When the claimant executed an application for social security account number on January 18, 1938, she gave her date of birth as November 2, 1892. An insurance policy which was issued to the claimant on April 1, 1940, by the Supreme Camp of the American Woodmen gave her age as 48; the insurer's documents supporting this policy indicate her date of birth to be November 2, 1892. The claimant also originally submitted an insurance policy issued to her on May 22, 1939, by the American National Insurance Company and on which the original entry of her age had been eradicated and typed over to indicate age 48 which would tend to establish 1890 or 1891 as the year of her birth; the supporting statement from the American National Insurance Company indicates their records show her date of birth to be November 2, 1893. At the hearing, in explaining age information given to the American National Insurance Company, the claimant said she gave an incorrect age (Transcript of Testimony, page 22).